795 P.2d 875

**James DeMOSS, Robert D. Ligeza, Tim Stockton and Michael R. Price, Plaintiff–Appellants,**

v.

**CITY OF COEUR D'ALENE, a municipal corporation; Eugene McAdams, Tom Wells, Arnold Halpern, Les Hutchinson and Doug Eastwood, Defendant–Respondents.**

No. 17507.

Supreme Court of Idaho.

July 30, 1990.

Michael J. Verbillis, Coeur d'Alene, for plaintiff-appellants.

Evans, Craven & Lackie, Coeur d'Alene, and Phillip J. Van de Veer, (argued), Spokane, Wash., for defendant-respondents.

BAKES, Chief Justice.

Plaintiff appellants (DeMoss *et al.*) brought suit in district court against defendant respondents (City of Coeur d'Alene *et al.*), seeking recovery for mental anguish

resulting from exposure to asbestos. The district court granted summary judgment in favor of the city on the following grounds: (1) that the worker's compensation exclusivity provisions barred any tort recovery; (2) that, in the alternative, the statute of limitations barred any tort recovery; and (3) that plaintiffs could not maintain an action under 42 U.S.C. § 1983 because the city was not acting under color of state law. Plaintiffs appeal this ruling. We affirm for the reasons set out below.

The four appellants in this action—DeMoss, Ligeza, Stockton and Price—were all employees of the City of Coeur d'Alene. The defendants are the City of Coeur d'Alene; McAdams, the city administrator; Wells, the head of the public works department; Halpern, the head of the parks, recreation and cemetery department; Hutchinson, the assistant director of the parks, recreation and cemetery department; and Eastwood, the foreman assigned to workmen under the parks and recreation department.

The City of Coeur d'Alene owned and maintained a community center which consisted of two old school buildings constructed in the early 1900's. In the fall of 1982, the furnace and boiler in the community center were found to be leaking. A city welder, John Austin, was called upon to repair the boiler if possible. The boiler was found to be beyond repair, so the city determined to cut the boiler up and remove it, as it was too large to be removed in one whole piece. John Austin testified in his deposition that he would not cut the boiler up until certain material insulating the boiler was removed because he *suspected* the material to be asbestos. Austin told the defendant Eastwood of this suspicion, but no effort was taken by Eastwood to verify that suspicion.

Around September, 1982, Eastwood directed appellants Ligeza, DeMoss and Price to remove the insulation material from the boiler. Ligeza stated in his deposition that Austin had told him that the material might be asbestos. Ligeza also stated he did not know at the time that asbestos was considered a health hazard, and that he, Ligeza, told Eastwood about the fact that the material might be asbestos but that Eastwood replied that nobody knew for sure what the material was and that there was a minimal risk. Ligeza testified also that he did not know for sure that the material was asbestos until November, 1984.

Around October, 1982, after completing removal of a portion of the insulation material, Eastwood and Hutchinson took some samples of the insulation material and sent those samples to a laboratory for testing in January, 1983. Eastwood claimed at this time that he refused to perform any additional work on the insulation removal until he had seen the test results of the samples taken earlier. On approximately February 3 or 4, 1983, Mr. Hutchinson and the City of Coeur d'Alene received a report from the laboratories which contained in it a statement that the material submitted for testing contained "20–30% chrysotile asbestos." The record discloses evidence that Hutchinson told Eastwood that the material was chrysotile, that it was harmless, and that no hazard would be presented by its removal. Thereafter, appellants Price and Stockton were directed by Eastwood to remove the remaining material from the gymnasium in the community center. These appellants were provided with paper masks and paper coveralls.

In his deposition, Eastwood testified that he learned for the first time in the latter part of 1985 that the material was in fact asbestos. Mr. Eastwood also testified that in his opinion there would have been no way for the employees who had actually been working with the material to discover its true composition before he had himself learned of its composition.

Appellants DeMoss and Ligeza filed a worker's compensation claim with the employer's surety after they had learned that the material they had been exposed to was asbestos. Those claims described their injuries as "possible asbestos contamination," and additionally that their "lungs may be affected by breathing the dust and fibers while removing asbestos covers." The claims did not assert allegations of

mental or emotional injury. Appellants Stockton and Price did not file a worker's compensation claim. DeMoss and Ligeza subsequently received notice from the Idaho State Insurance Fund, the city's compensation carrier, that their claims were denied. No application for hearing was filed by the claimants with the Industrial Commission within the time provided in I.C. § 72–706.

On February 6, 1986, appellants filed this action in the district court alleging that the defendants were liable for (1) assault and battery (or unprovoked physical aggression under I.C. § 72–209(3)), and (2) deprivation of civil rights under 42 U.S.C. § 1983 and Article I, § 18, of the Idaho Constitution. At the time the complaint was filed, and up to the time that summary judgment was granted against them, none of the appellants made any claim or showing that they were suffering from asbestosis. The defendant City of Coeur d'Alene filed a motion for dismissal and/or summary judgment. The district court entered a memorandum opinion granting summary judgment in favor of the defendants on the grounds that the tort claims were (1) barred by the exclusive remedy provisions of I.C. § 72–209; (2) barred by the statute of limitations; and (3) that the claims under 42 U.S.C. § 1983, and Article I, § 18, of the Idaho Constitution were also barred. The plaintiffs appealed this ruling.

The following issues have been raised on appeal: (1) did the district court err in holding that I.C. § 72–209(3) precluded recovery in tort; (2) did the district court err in denying appellants' constitutional claims under 42 U.S.C. § 1983, and Article I, § 18, of the Idaho Constitution; and (3) did the district court err in holding that plaintiffs' tort claims are barred by the statute of limitations, I.C. § 5–219(4)?

We first consider whether I.C. § 72–209(3) precludes appellants from any recovery on the state law tort claims. I.C. § 72–209(3) provides that an employee's remedies under the worker's compensation statutes are exclusive. Employers and their other employees and agents are exempt from tort liability for industrial acci-

dents under the worker's compensation statutes, "provided that such exemptions from liability shall not apply in any case where the injury or death is proximately caused by the willful or unprovoked physical aggression of the employer." I.C. § 72–209(3); *Kearney v. Denker*, 114 Idaho 755, 760 P.2d 1171 (1988); *Wilder v. Redd*, 111 Idaho 141, 721 P.2d 1240 (1986); *Yeend v. United Parcel Service, Inc.*, 104 Idaho 333, 659 P.2d 87 (1983). Appellants recognize that the statute, I.C. § 72–209, generally exempts the employer and its agents from liability. Appellants claim, however, that the employer—in this case, the City of Coeur d'Alene—and the other employee defendants are guilty of "unprovoked physical aggression" under I.C. § 72–209(3), and thus are not exempt.

We considered the implications of I.C. § 72–209(3) in *Kearney v. Denker*, and stated that "[t]o prove aggression there must be evidence of some offensive action or hostile attack. It is not sufficient to prove that the alleged aggressor committed negligent acts that made it substantially certain that injury would occur." 114 Idaho at 757, 760 P.2d at 1173.

Appellants argue that the various defendants in this action knew that the material they requested the appellants to remove was asbestos; that the defendants "lied" to the appellants by not telling them it was asbestos; and that the defendants failed to provide adequate protective gear to the appellants, all of which was tantamount to an "offensive action or hostile attack." The trial court rejected appellants' argument and concluded that, "There is no showing herein of any hostility of any of the defendants toward any of the plaintiffs," and thus no showing of unprovoked physical aggression, as required by I.C. § 72–209(3). After thoroughly reviewing the affidavits, depositions and other pleadings, the district court stated:

The city and its supervisory employees may have been negligent, even grossly negligent, in not recognizing the danger but there is simply no evidence herein that any of the supervisors or the higher city officials ever willfully or intentional-

ly wanted to cause injury to the plaintiffs. . . . The plaintiffs themselves have all testified that they had no reason to suspect that any of the defendants wanted to cause them any injury. . . . There is no showing herein of any hostility of any of the defendants toward any of the plaintiffs.

The record discloses, as noted by the district court, that the plaintiffs all acknowledged that they had no reason to believe any of the defendants harbored ill feelings toward them or wanted to cause them injury in any manner. The record shows further that John Austin, the city welder, told defendant Eastwood that he thought the material might be asbestos. The record does not show that Eastwood or any of the defendants actually knew that it was asbestos until the test results from the laboratory were received. These test results were received after the appellants' first exposure to the asbestos had occurred. Moreover, while the protective clothing provided the workers prior to the second round of removal may indeed have been inadequate, that does not rise to the level of "unprovoked physical aggression." To reiterate what we said in *Kearney v. Denker,* "It is not sufficient to prove that the alleged aggressor committed negligent acts that made it substantially certain that injury would occur." 114 Idaho at 757, 760 P.2d at 1173. The plaintiffs have not proved any "willful or unprovoked physical aggression" as required in I.C. § 72–209(3), and thus the plaintiffs' state tort claims were preempted by the Worker's Compensation Act. I.C. §§ 72–201 *et seq.* The trial court did not err in granting summary judgment in favor of the defendants on that claim. I.R.C.P. 56(c); *Kearney v. Denker,* 114 Idaho 755, 760 P.2d 1171 (1988).

■ We next consider whether the district court erred in denying appellants' constitutional claims under 42 U.S.C. § 1983, and Article I, § 18, of the Idaho Constitution. Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws" of the United States by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983; *Gomez v. Toledo,* 446 U.S. 635, 638, 100 S.Ct. 1920, 1922, 64 L.Ed.2d 572 (1980); *Cope v. State,* 108 Idaho 416, 700 P.2d 38 (1985).

Appellants argue that they have been "deprived" of a constitutionally protected right. They argue that they have a constitutional right to be free from bodily injury, citing *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), for the proposition that "the interest in freedom from bodily injury surely qualifies as an interest in 'liberty'." Appellants further argue that this "deprivation" was committed "under color of state law," thereby meeting the two requirements for a 42 U.S.C. § 1983 action. The district court rejected appellants' claim on the basis that the city officials were not acting "under color of state law."

The "state action" requirement of the fourteenth amendment and the "under color of state law" requirement of 42 U.S.C. § 1983 have been construed by the United States Supreme Court to be substantially the same. *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). There is no rigid formula for measuring state action for purposes of § 1983 liability. Rather, it is a process of "sifting facts and weighing circumstances." *Reitman v. Mulkey,* 387 U.S. 369, 378, 87 S.Ct. 1627, 1633, 18 L.Ed.2d 830 (1967). While the question of what constitutes state action is often a difficult question, prior to answering that question the plaintiff must first establish that he has been "deprived" of a constitutionally protected right in order to establish a cause of action under 42 U.S.C. § 1983. As noted by the United States Supreme Court in *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' [of the United States]." 443 U.S. at 140, 99 S.Ct. at 2692. If the appellants have failed to establish that first requirement—the deprivation of a right "secured by the Constitution and laws" of the

United States—then we need not reach the issue of whether the defendants were acting under color of state law.

Regarding the requirement that plaintiffs prove that they have been deprived of a constitutionally protected right, appellants argue that they have been "deprived" of their liberty interest in "freedom from bodily injury." However, the record reveals no evidence that appellants have suffered any bodily injury. Appellants have made no showing or even claim to suffer from asbestosis, cancer, or any other deleterious side effect from their exposure to asbestos. Appellants claim that they have suffered "psychic damage" caused by their knowledge that they had been exposed to asbestos and, as a consequence, they fear that they may at some point in the future contract asbestosis and other possible diseases. Essentially, there has been no "deprivation" of any constitutionally protected right, but simply a fear that such a deprivation may occur at some point in the future. However, that is insufficient to establish a claim under 42 U.S.C. § 1983.

Appellants cite and rely upon *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394 (5th Cir.1986), and *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir.1988), for the proposition that "fear of cancer" is itself a present injury which can result in a "deprivation" of a constitutionally protected right within the meaning of 42 U.S.C. § 1983. However, those cases do not support appellants' claims. In the first place, those cases were not § 1983 actions, but were diversity jurisdiction state tort claims for intentional infliction of emotional distress, and thus would be abolished under I.C. § 72–209, which abolishes all such claims in favor of exclusive liability and jurisdiction under the Worker's Compensation Act. Furthermore, the plaintiffs in those cases had suffered some physical injury at the time they brought their complaint and were able to prove with a reasonable degree of probability that they would in fact contract cancer. For instance, in *Jackson v. Johns–Manville*, the plaintiff had asbestosis (unlike appellants here) when he brought his claim. The *Jackson* court stated, "There was consider-

able testimony before the jury to the effect that Jackson will probably develop cancer; it is in that context that we discuss damages for mental anguish. *We do not consider whether a plaintiff who cannot show that he will probably develop cancer may recover for mental distress.*" 781 F.2d at 413, n. 25 (emphasis added). Significantly, the *Jackson* court also noted that, "In a sense, the injury in this case is the inhalation of asbestos fibers. It was not an *actionable* injury, however, meaning it was not legally cognizable, until at least one *effect* of the inhalation became manifest. *There was no cause of action at all, in other words, until the asbestosis appeared.*" 781 F.2d at 412 (emphasis added).

Similarly, in *Sterling v. Velsicol,* the court noted that:

> Where the basis for awarding damages is the potential risk of susceptibility to future disease, the predicted future disease must be medically reasonably certain to follow *from the existing present injury.* While it is unnecessary that the medical evidence conclusively establish with absolute certainty that the future disease or condition will occur, mere conjecture or even possibility does not justify the court awarding damages for a future disability which may never materialize.

855 F.2d at 1204 (emphasis added).

We conclude that, while freedom from bodily injury may be a constitutionally protected right, the deprivation of which may give rise to a cause of action under 42 U.S.C. § 1983, the freedom from fear of bodily injury is not sufficient, standing alone, to give rise to a cause of action under that section. Thus, the plaintiffs have not established that they have been deprived of a constitutionally protected right as is required to maintain an action an action under 42 U.S.C. § 1983. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Martinez v. State of California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980).

■ Another aspect of the deprivation analysis of the § 1983 jurisprudence focuses on the manner in which the defendants "deprived" the plaintiffs of their constitutionally protected rights. As noted by the United States Supreme Court in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), mere negligence on the part of a defendant is not sufficiently egregious conduct to work a deprivation of a constitutionally protected right. The *Daniels* court stated:

> Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

474 U.S. at 332, 106 S.Ct. at 665. In *Daniels*, the Supreme Court overruled its earlier decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), which had held that negligent conduct was sufficient to maintain a 42 U.S.C. § 1983 action. The *Daniels* court agreed with Justice Powell's concurring opinion in *Parratt* and his argument that "mere negligence could not work a deprivation in the *constitutional sense.*" 451 U.S. at 549, 101 S.Ct. at 1919 (emphasis in original). The *Daniels* court emphasized that historically the "guarantee of due process has been applied to *deliberate decisions of government officials to deprive a person of life, liberty, or property.*" 474 U.S. at 332, 106 S.Ct. at 665 (emphasis added). Thus, *Daniels* makes clear that mere negligence or lack of due care on the part of a state official does not rise to the level of a deprivation of a constitutionally protected right, and to hold such would be to trivialize the rights secured by the Constitution. The *Daniels* court did not decide whether something less than intentional conduct, such as recklessness or gross negligence, would be enough to trigger the protections of the due process clause. Nevertheless, appellants argue that under relevant decisions of the Sixth and Ninth Circuits, *e.g., Nishiyama v. Dickson County*, 814 F.2d 277 (6th Cir.1987), and *Estate of Conners*

*v. O'Connor*, 846 F.2d 1205 (9th Cir.1988), that "gross negligence" is sufficient to maintain a 42 U.S.C. § 1983 action, and that the conduct of the defendants in the instant action was, at a minimum, grossly negligent. We do not decide today whether the United States Supreme Court would consider "gross negligence" as sufficient to impose liability if a person be deprived of a constitutionally protected right. Plaintiffs have not been deprived of a constitutionally protected right merely because they fear that they may contract asbestosis or cancer sometime in the future. We simply note for the purpose of clarification that mere negligence is not sufficient to impose liability in the event that a deprivation has occurred. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). No deprivation has occurred in this case.

Finally, we consider appellants' claim that the district court's ruling violates their rights under Article I, § 18, of the Idaho Constitution. That section provides:

> **§ 18. Justice to be freely and speedily administered.**—Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice.

Appellants argue that the effect of the district court's ruling in this case is to deny them any remedy for their injuries. Appellants reason that the district court denied their tort claims, their constitutional claims, and allege that their worker's compensation claims were also denied. Thus, appellants argue, the effect of the district court ruling is to deny them any remedy for their injuries in any forum, and this is a violation of Article I, § 18, which guarantees a remedy for every injury. This argument is without merit for the following reasons.

■ First, as noted earlier, plaintiffs have not established any injury sufficient to establish any deprivation of a constitutionally protected right. Article I, § 18, does not establish any such substantive right. As we noted recently in *Hawley v. Green*, 117 Idaho 498, 788 P.2d 1321 (1990):

Examination of art. 1, § 18, begins with the seminal case of *Moon v. Bullock,* 65 Idaho 594, 151 P.2d 765 (1944),.... In *Moon* this Court refused to interpret art. 1, § 18, as guaranteeing a remedy to every person for every injury. ....

....

... We thus approved in *Moon* the holding that art. 1, § 18, merely admonishes the Idaho courts to dispense justice and to secure citizens the rights and remedies afforded by the legislature or by the common law, and that art. 1, § 18, did not create any substantive rights.

117 Idaho 498, 500–01, 788 P.2d 1321, 1323–24 (1990).

Article I, § 18, of the Idaho Constitution "did not create any substantive rights," 117 Idaho at 501, 788 P.2d at 1324, and so appellants' complaint does not state any substantive claim based on Article I, § 18.

■ Moreover, as the district court observed, the appellants have not been denied relief in every forum. Their worker's compensation claims were not "denied." In the first place, only appellants DeMoss and Ligeza filed worker's compensation claims. The appellants Stockton and Price did not file such claims. The claims of appellants DeMoss and Ligeza were not denied by the Industrial Commission. No hearing was ever requested as provided in I.C. § 72–706. Rather they were merely notified in a letter from the Idaho State Insurance Fund, the employer's surety, that their claims were not covered under the worker's compensation law. As the district court noted, "This was not a decision of the Industrial Accident Commission. It should be further noticed that plaintiffs did not pursue their claims before the Industrial Accident Commission and seek any determinative ruling from that body which could be appealed to the Supreme Court." The district court stated further that the State Insurance Fund is simply "an insurance carrier and makes no binding rulings or conclusions having the force of a decision." There is no support in the record for a claim that appellants have been denied a remedy in every forum, even assuming they had established a state tort claim or a

42 U.S.C. § 1983 deprivation of a constitutionally protected right.

In view of our disposition of this case, we do not address the statute of limitations issue and the claim that the city was not acting under color of state law, which the trial court also held to be grounds for dismissal of the plaintiffs' complaint.

Accordingly, the judgment of the district court is therefore affirmed. Costs to respondents. No attorney fees allowed.

JOHNSON, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, specially concurring.

Chief Justice Bakes has written a comprehensive decision which addresses all of the various claims of the plaintiffs and explains in some detail why those claims, or better put, theories, are not entitled to be tried to a jury. I will comment briefly on what is believed to be a just disposition, but only after first setting out what is thought to be pretty much the main thrust of the Court's opinion:

In his deposition, Eastwood testified that he learned for the first time in the latter part of 1985 that the material was in fact asbestos. Mr. Eastwood also testified that in his opinion there would have been no way for the employees who had actually been working with the material to discover its true composition before he had himself learned of its composition.

Appellants DeMoss and Ligeza filed a worker's compensation claim with the employer's surety after they had learned that the material they had been exposed to was asbestos. Those claims described their injuries as 'possible asbestos contamination,' and additionally that their 'lungs may be affected by breathing the dust and fibers while removing asbestos covers.' The claims did not assert allegations of mental or emotional injury. Appellants Stockton and Price did not file a worker's compensation claim. DeMoss and Ligeza subsequently received notice from the Idaho State Insurance Fund,

the city's compensation carrier, that their claims were denied. No application for hearing was filed by the claimants with the Industrial Commission within the time provided in I.C. § 72–706.

. . . .

At the time the complaint was filed, and up to the time that summary judgment was granted against them, none of the appellants made any claim or showing that they were suffering from asbestosis.

. . . .

Appellants recognize that the statute, I.C. § 72–209, generally exempts the employer and its agents from liability. Appellants claim, however, that the employer—in this case, the City of Coeur d'Alene—and the other employee defendants are guilty of 'unprovoked physical aggression' under I.C. § 72–209(3), and thus not exempt.

. . . .

Appellants have made no showing or even claim to suffer from asbestosis, cancer, or any other deleterious side effect from their exposure to asbestos. Appellants claim that they have suffered 'psychic damage' caused by their knowledge that they had been exposed to asbestos and, as a consequence, they fear that they may at some point in the future contract asbestosis and other possible diseases. Essentially, there has been no 'deprivation' of any constitutionally protected right, but simply a fear[1] that such a deprivation may occur at some point in the future. However, that is insufficient to establish a claim under § 1983.

. . . .

Furthermore, the plaintiffs in those cases had suffered some physical injury at the time they brought their complaint and were able to prove with a reasonable degree of probability that they would in fact contract cancer. For instance, in *Jackson v. Johns–Manville* [781 F.2d 394 (5th Cir.1986)], the plaintiff had asbestosis (unlike appellants here) when he

brought his claim. The *Jackson* court stated, 'There was considerable testimony before the jury to the effect that Jackson will probably develop cancer; it is in that context that we discuss damages for mental anguish. *We do not consider whether a plaintiff who cannot show that he will probably develop cancer may recover for mental distress.*' 781 F.2d at 413 (emphasis added) [emphasis in majority opinion]. Significantly, the *Jackson* court also noted that, 'In a sense, the injury in this case is the inhalation of asbestos fibers. It was not an *actionable* injury, however, meaning it was not legally cognizable, until at least one *effect* of the inhalation became manifest. *There was no cause of action at all, in other words, until the asbestosis appeared.*' 781 F.2d at 412 (emphasis added) [emphasis in majority opinion].

. . . .

We do not decide today whether the United States Supreme Court would consider 'gross negligence' as sufficient to impose liability if a person be deprived of a constitutionally protected right. Plaintiffs have not been deprived of a constitutionally protected right merely because they fear that they may contract asbestosis or cancer sometime in the future. We simply note for the purpose of clarification that mere negligence is not sufficient to impose liability in the event that a deprivation has occurred. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). No deprivation has occurred in this case.

. . . .

Moreover, as the district court observed, the appellants have not been denied relief in every forum. Their worker's compensation claims were not 'denied.' In the first place, only appellants DeMoss and Ligeza filed worker's compensation claims. The appellants Stockton and Price did not file such claims. The claims of appellants DeMoss and Ligeza were not denied by the Industrial Commission. No hearing was ever re-

---

1. To be more accurate, this is not "simply a fear" but an induced fear caused by and attrib- utable to the defendants.

quested as provided in I.C. § 72–706. Rather they were merely notified in a letter from the Idaho State Insurance Fund, the employer's surety, that their claims were not covered under the worker's compensation law. As the district court noted, 'This was not a decision of the Industrial Accident Commission. It should be further noticed that plaintiffs did not pursue their claims before the Industrial Accident Commission and seek any determinative ruling from that body which could be appealed to the Supreme Court.' The district court stated further that the State Insurance Fund is simply 'an insurance carrier and makes no binding rulings or conclusions having the force of a decision.' There is no support in the record for a claim that appellants have been denied a remedy in every forum, even assuming they had established a state tort claim or a 42 U.S.C. § 1983 deprivation of a constitutionally protected right.

118 Idaho at 177–182, 795 P.2d at 876–881.

In my view there is only one just conclusion to be drawn. The plaintiffs and their able counsel had good reason to believe that they were possessed of a viable cause of action which could be successful on some, if not all, of the various theories pleaded. What must be kept foremost in mind is that there are statutes of limitations in Idaho, and case law interpreting, applying, and perhaps modifying those statutes as a result of which the "limitations," limiting the *time* in which to file an action, in actuality are time limits which forever *bar* and wholly preclude the pursuit of an action for damages. This is so notwithstanding that the proof of the injury which is the cause of the damages is in time capable of being proved because substantial proof of the injury has subsequently materialized. It may very well be what will develop insofar as these plaintiffs are concerned. In the meanwhile, not only do the plaintiffs endure the emotional stress occasioned by the exposure to asbestos, they have endured the stress and worry of being uncertain as to whether they do have a viable claim, and stand in the danger of losing their claims later on when a court might rule that their claims are time-barred, *i.e.*, they cannot get into court.

Faced with a classic Catch–22 situation, and advised by extremely capable counsel, the plaintiffs have come to court, but are now told that they do not presently have valid justiciable claims. The Court's opinion presently appears to be soundly written and it disposes adversely to the plaintiffs of each and every one of their theories of relief. The net of the Court's opinion is that it tells the plaintiffs that their claims are prematurely brought, and while they have been exposed to asbestos in a rather indifferent manner by the named defendants, they cannot medically establish that they are victims of asbestosis. In short, they have not been injured. This, to them, may not make a lot of sense. It is also of a lingering concern in my mind because it bears much similarity to the situation at Hanford, Washington, and its residents. It is difficult to be wholly persuaded that the emotional concern, fear, doubt, and trepidation which has allegedly beset these plaintiffs, and likewise the people of Hanford, does not arise to the level of an injury. In a large sense it depends on the individual. People have been known to worry and fret themselves to death in far less serious circumstances. Others are not so affected.

But what the Court does today is to rule that on the evidence before it, the plaintiffs have not been injured, and therefore do not have claims to litigation. That is not to say that the situation will change accordingly when and if symptoms of illness materialize and are medically probable. In sum, the Court should include in its opinion that the action is dismissed, but is *res judicata* of nothing other than a critical element of viable claims which were not established, namely injury. Thus viewed, the case is similar to an action to collect on a promissory note, but brought prior to maturity. All the Court should do today to make this one of its best decisions is to add that the dismissal is without prejudice.