# IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 43639

RONNEL E. BARRETT, an individual; )
GREGG HAMMERBERG, an individual; )
ERIC J. TESTER, an individual; and )
MATTHEW WILLIAMS, an individual, )
                                         )
     Plaintiffs-Appellants, )
                                         )
v. )     Coeur d'Alene, August 2016
                                         )
HECLA MINING COMPANY, a Delaware )     2016 Opinion No. 133
Corporation; JOHN JORDAN, an individual; )
DOUG BAYER, an individual; )
and SCOTT HOGAMIER, an individual, )     Filed:  November 18, 2016
                                         )
     Defendants-Respondents, )     Stephen W. Kenyon, Clerk
                                         )
and )
                                         )
DOES 1-X, unknown parties, )
                                         )
     Defendants. )

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County.  Hon. Lansing L. Haynes, District Judge.

District court order granting summary judgment, <u>affirmed.</u>

Rossman Law Group, PLLC, Boise, for appellants.  Eric S. Rossman argued.

Ramsden, Marfice, Ealy & Harris, LLP, Coeur d'Alene, for respondents.  Michael E. Ramsden argued.

---

BURDICK, Justice

    Ronnel E. Barrett, Gregg Hammerberg, Eric J Tester, and Matthew Williams (Appellants) appeal the Kootenai County District Court's grant of summary judgment in favor of Hecla Mining Company, et al. (Hecla). Appellants were injured in a rock burst that occurred on December 14, 2011, at the Lucky Friday Mine, which is owned and operated by Hecla. Appellants contend that Hecla knew the mine was unsafe and knowingly placed Appellants in

danger of harm. Appellants claim that such behavior constituted an act of "willful[1] or unprovoked physical aggression" that is not exclusively covered by the Idaho Worker's Compensation Act (IWCA). On cross motions for summary judgment, the district court ruled that because there was no evidence that Hecla specifically intended to harm Appellants the claims were controlled exclusively by the IWCA. On appeal, Appellants argue that the district court erred in its determination that the IWCA exclusively governed their claims. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 2011, a rock burst occurred at the 5900 level of the Gold Hunter Vein of the Lucky Friday Mine. Immediately following the rock burst, Hecla notified the Mine Safety and Health Administration (MSHA) of the event and halted all mining activities in the entire mine. That same day, Hecla managers and MSHA representatives entered the mine to assess the damage and began development of a rehabilitation plan for the affected area. Hecla also hired Wilson Blake, PhD, an expert in rock mechanics, to evaluate the cause of the rock burst, assess the stability of the 5900 level pillar, assist in designing a rehabilitation plan, and develop a safety protocol for the implementation of that plan.

After inspecting the affected area, Blake prepared a memorandum dated November 25, 2011, stating that the vertical and horizontal stress on the pillar leading up to the November 16, 2011, rock burst was very near the pillar's maximum unconfined strength; that a rehabilitation plan would contain damage from any further rock bursts; that another large rock burst along the 5900 level pillar was unlikely; and that a rehabilitation plan would have adequate safety measures for miners conducting the repairs. Blake's memo was sent to MSHA, and MSHA approved Hecla's rehabilitation plan.

The rehabilitation plan consisted of two phases. The first phase consisted of reinforcing the ceiling and walls of the tunnel with bolts, chain-link mesh, and "shotcrete," a specialized concrete applied with compressed air at high velocity. The second phase was the installation of a steel tunnel liner. After completion of the first phase on December 1, 2011, MSHA permitted Hecla to resume normal mining activity while awaiting the arrival of the steel liners. The liners arrived on December 12, 2011, all mining activity was halted on December 13, 2011, and installation of the liners began on December 14, 2011. Doug Bayer, the Superintendent of the

---

[1] "Willful" is spelled in section 72-209(3) using the archaic spelling: "wilful." We, however, will use the modern spelling, "willful," throughout.

Luck Friday Mine, oversaw and participated in the installation of the tunnel liner and spent several hours on site at the 5900 pillar inspecting and assisting in the installation of the liner. Appellants were part of the team assigned to help with the installation of the liner. At approximately 7:40 p.m. on December 14, 2011, a rock burst occurred in the 5900 pillar injuring Appellants and other workers.

Appellants filed a complaint on December 11, 2013, alleging "knowing, intentional, willful and wanton injury to [Appellants], respondeat superior liability against Hecla, and intentional infliction of emotional distress." Appellants alleged that Hecla committed an act of "willful or unprovoked physical aggression" by assigning them to work in an area that was extremely dangerous without informing Appellants of the dangerous conditions. On May 29, 2015, Hecla filed a motion for summary judgment arguing that Appellants' claims were barred by the exclusivity provision of the IWCA. On June 15, 2015, Appellants filed a motion for partial summary judgment seeking a ruling that Hecla's actions satisfied the exception to exclusivity provision of the IWCA. On August 28, 2015, the district court entered an order granting Hecla's motion for summary judgment. In its decision the district court found that while Hecla's actions supported a claim of negligence, they "do not constitute an act of willful physical aggression." Appellants timely appeal.

## II.    STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, and apply the same standard used by the district court in ruling on the motion. *Grazer v. Jones*, 154 Idaho 58, 64, 294 P.3d 184, 190 (2013). Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). All reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party, and disputed facts are liberally construed in the nonmoving party's favor. *Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008).

## III.    ANALYSIS

Appellants argue that in spite of knowing that pillar 5900 was unsafe and that rock bursting "was likely and expected to occur," Hecla sent miners into the 5900 pillar level. Appellants argue that such behavior is tantamount to "willful and physical aggression" and

3

triggers the exclusivity exception under section 72-209(3). Therefore, Appellants contend that the district court erred in granting Hecla summary judgment based on the exclusivity of the IWCA.

The IWCA's exclusivity rule provides: "Subject to the provisions of section 72-223, the liability of the employer under this law shall be exclusive and in place of all other liability of the employer to the employee, his spouse, dependents, heirs, legal representatives or assigns." I.C. § 72-209(1). Thus, we have stated: "Generally, the Idaho worker's compensation law provides the exclusive remedy for injuries arising out of and in the course of employment." *Kearney v. Denker*, 114 Idaho 755, 757, 760 P.2d 1171, 1173 (1988). There is an exception to this rule, however, "where the injury or death is proximately caused by the willful or unprovoked physical aggression of the employer, its officers, agents, servants or employees." I.C. § 72-209(3).

Appellants argue that the section 72-209(3) exception applies "where an employer engages in an offensive act and willfully exposes an employee to circumstances creating substantial likelihood of injury . . . ." In support of this argument, Appellants largely rely on this Court's decision in *Dominguez v. Evergreen Res., Inc.*, 142 Idaho 7, 121 P.3d 938 (2005). As we stated in *Marek v. Hecla, LTD*, No. 43269, slip op. at 9–10 (Idaho Nov. 18, 2016) reliance on *Dominguez* for this proposition is misplaced.

Rather, the exception only applies in instances where the employer engages in either "willful physical aggression" or "unprovoked physical aggression." Willful physical aggression occurs "where there is evidence that the employer (1) committed an offensive action or hostile attack (2) aimed at the bodily integrity of the employee with (3) a willful, i.e., specific, intent to injure the employee." *Marek*, slip op. at 7. Unprovoked physical aggression occurs "where the employer (1) committed an offensive action or hostile attack (2) aimed at the bodily integrity of the employee with (3) an unprovoked, i.e., general, intent to injure an employee." *Id.* at 8. To support a finding that the employer acted with specific intent there must be evidence that "the employer wished a specific employee harm and then effectuated some means appropriate to that end." *Id.* at 7. To support a finding that the employer acted with general intent, the employee does not have to show the employer specifically wished the employee harm, but rather there must be evidence that "the employer actually knew or consciously disregarded knowledge that employee injury would result from the employer's action." *Id.* at 8.

4

Here, Appellants contend that Hecla engaged in "willful or unprovoked physical aggression" because Hecla was aware the 5900 level pillar was unstable, lied about the stability of the pillar to MSHA and its employees, and then ordered its employees to work on the 5900 level pillar knowing there was a "high degree of probability that [] harm would result." There is no allegation, and the evidence in the record does not reflect, that Hecla specifically intended to injure Appellants.[2] Rather, Appellants only contend that Hecla knew the pillar was "dangerous and unstable" due to "objectively identifiable stress measurements." In support of this assertion, Appellants point to stress measurements recorded during the days leading up to the rock burst and to a report done by Blake in which Blake indicates the pillar had reached its maximum unconfined strength, the walls of the pillar continued to carry stress, and the pillar was "borderline stable."

Regarding the stress measurements, both Blake and Mark Board, PhD, who were retained by Hecla to provided modeling and consultation on the stability of the 5900 pillar, testified that although stress was increasing on the pillar, the increase was not indicative of an impending rock burst or pillar failure. Blake specifically stated: "It's increasing, but it's – it's not a dramatic increase as we often see prior to something happening." And Board stated: "[T]he readings that were taken do not show an increase in stress that would be predictive of the failure of the 5900 drift pillar and certainly are not predictive of the rock burst . . . ." Thus, the stress measurements cannot be said to be evidence that Hecla had actual knowledge that the pillar would collapse or that a rock burst would occur.

Regarding Blake's report, the report states that the pillar is "very near the unconfined compressive strength of the pillar, and any further loss of confinement could lead to pillar failure." The report further states that "we know that the present pillar is still under stress, and will continue to be loaded by the mining being carried out below the 5900 level, hence, further bursting in and around the 5900 pillar is anticipated." Finally, in his report, Blake also states: "This pillar is borderline stable based on mining history at Lucky Friday/Gold Hunter." However, the overall conclusion of the report is that the pillar could be rehabilitated and that the rehabilitation would "prevent damage to the 5900 pillar drift from any magnitude burst that might occur in or along the edges of the 5900 pillar." Thus, when taken in context, Blake's

---

[2] Although not argued by Appellants, because there is no evidence that Hecla wished Appellants harm, we note that there is no support in the record for a finding that Hecla engaged in "willful physical aggression."

statements in the report are not indicative of pending pillar failure and do not support a finding that Hecla actually knew the pillar would fail or that a rock burst would occur. Indeed, Blake concludes by stating, "[T]he occurrence of another large 2.8 magnitude burst in this pillar is very unlikely, [however] it cannot be totally eliminated."

This case is similar to *DeMoss v. City of Coeur d'Alene*, 118 Idaho 176, 795 P.2d 875 (1990). In *DeMoss*, employees were directed to remove insulation material from an old boiler located in a building owned by the City of Coeur d'Alene. *Id.* at 177, 795 P.2d at 876. During removal, one of the employees suspected the material being removed was asbestos and reported as much to the foreman. *Id.* The foreman halted the removal, and he and the assistant director took samples of the insulation material and sent them to a laboratory for testing. *Id.* The assistant director received a report from the laboratory reporting that the material contained "20-30% chrysotile asbestos." *Id.* The assistant director then told the foreman the material was chrysotile, it was harmless, and no hazard would be presented by its removal. *Id.* The employees were then given paper masks and coveralls and directed by the foreman to remove the remaining insulation. *Id.* The employees argued that because the City knew the material was asbestos, lied to the employees by not telling them it was asbestos, and failed to provide adequate protective gear to the employees, the City's actions constituted "willful or unprovoked physical aggression" under section 72-209(3). We held that the exclusivity exception in section 72-209(3) did not apply, noting that none "of the defendants knew that it was asbestos until the test results from the laboratory were received." *Id.* at 179, 795 P.2d at 878. Even after it was revealed that the material was asbestos and the employer withheld that knowledge from the employees and sent them back to finish the removal with allegedly inadequate protective clothing, we still noted that "while the protective clothing provided [to] the workers prior to the second round of removal may indeed have been inadequate, that does not rise to the level of 'unprovoked physical aggression.' " *Id.*

Here, like the employer in *DeMoss*, Hecla knew of the possibility of injury to its employees because it knew it was possible that additional rock bursts could occur in the 5900 pillar. But, there is no evidence Hecla had actual knowledge another rock burst would occur before the rehabilitation of the pillar could be completed or that one would occur while Appellants were working on the pillar. Moreover, according to the undisputed testimony of Board, "[a] rock burst is an unpredictable event of rock failure of brittle, intact, rock." *See also*

6

30 C.F.R. § 57.2 (defining a rock burst as a "sudden and violent failure of overstressed rock resulting in the instantaneous release of large amounts of accumulated energy."). Thus, although Hecla was aware the pillar posed a significant risk and did not disclose the extent of that risk to its employees, there is no evidence that Hecla had actual knowledge the pillar would experience a rock burst at the time Appellants were sent to finish the rehabilitation work on the pillar.

Rather, like the employer in *DeMoss*, Hecla, after learning of the risks posed, implemented a plan to address the risk. However, here—unlike in *DeMoss*, where the plan implemented was perhaps not the best laid plan—Hecla hired an expert consultant to develop a rehabilitation plan and obtained authorization from MSHA to implement that plan. While the plan was almost certainly implemented negligently, perhaps even grossly so,[3] there simply is no evidence that Hecla had actual knowledge a rock burst would occur or that Appellants would be injured until the rock burst actually happened.[4] Absent allegations or evidence that Hecla specifically intended to harm Appellants or that Hecla had actual knowledge the rock burst would occur, the district court did not err in granting Hecla summary judgment. *Marek*, slip op. at 11 ("Absent evidence that [the employer] specifically intended to harm [the Appellants] or that [the employer] had actual knowledge that the stope and would collapse, the district court did not err in granting [the employer] summary judgment."); *see DeMoss*, 118 Idaho at 179, 795 P.2d at 878; *Kearney*, 114 Idaho at 757–58, 760 P.2d at 1173–74; *cf. Dominguez*, 142 Idaho at 9, 121 P.3d at 940 (2005) (holding that the exclusivity exception applied where it was alleged that the employer knew it was hazardous to enter the cyanide-laced tank).

---

[3] The plan called for the implantation of six stress gauges. Hecla, however, only installed three of them, and one of the three Hecla installed was defective. MSHA, citing Hecla for failing to properly monitor the stress in the wall, stated: "The company has engaged in aggravated conduct constituting more than ordinary negligence in that they were aware that the East Low stress gauge was defective and assigned miners to work in this area without knowing if the East wall was building stress." Furthermore, even though Hecla was aware that the 5900 pillar was near its compressive strength and that blasting triggered rock bursts, Hecla resumed mining by blasting at three different levels and at least ten sites not far removed from the 5900 pillar.

[4] Appellants provide affidavits from Jack Spadaro, PhD, and James W. Dally, PhD, who opine that based on Blake's report, the stress measurements, and Lucky Friday's propensity for rock bursts, Hecla "knew," "had knowledge ," "actually knew," or "should have reasonably known" of unsafe and dangerous conditions within the 5900 pillar and that Hecla knew "there was a high degree of probability that [ ] direct physical injury would actually result" and that "miners could die or be seriously injured." However, knowledge of a potentially dangerous working condition is not sufficient to meet the standard. *See DeMoss*, 118 Idaho at 177, 179, 795 P.2d at 876, 878 (noting that even though employer knew the material was asbestos and concealed that knowledge from the employees, it did not rise to the level of willful or unprovoked physical aggression). And knowledge that there is a high probability that someone "could die or be seriously injured" is not the same as certain knowledge that someone "would die or be seriously injured."

7

## IV.    CONCLUSION

Because there is no evidence to support a finding that Hecla's actions amounted to "willful or unprovoked physical aggression" we affirm the district court's judgment. Costs to Hecla.

Chief Justice J. JONES and W. JONES, **CONCUR.**

HORTON, J., concurring in the result.

Although I concur in the result reached by the Court, I am unable to join in the Court's holding as to the meaning of "unprovoked physical aggression" for the reasons stated in my concurring opinion in *Marek v. Hecla*, Docket No. 43269.

Justice EISMANN, concurs.