362 P.2d 1083

**STATE of Idaho, Plaintiff-Respondent**

v.

**Dave PAPSE, Defendant-Appellant.**

No. 8886.

Supreme Court of Idaho.

June 28, 1961.

Black & Black, Pocatello, for appellant.

Frank Benson, Atty. Gen., Dwight F. Bickel, William E. Swope, Asst. Attys. Gen., Hugh Maguire, Jr., Pros. Atty. for Bannock County, Peter A. McDermott, Asst. Pros. Atty., Pocatello, for respondent.

TAYLOR, Chief Justice.

At about nine p. m. on August 6, 1958, one Jack Vandercreek, a dentist, then residing at Blackfoot, in Bingham county, was returning home with his family from a visit to Indian Springs, in Power county. Dr. Vandercreek was driving a car north on Philbin road, a hard-surfaced, through highway, at a speed of 50 to 55 miles per hour. At the intersection of Philbin and Tyhee roads, the Vandercreek car was struck on the left side by a car driven by

the defendant (appellant). As a result, the Vandercreek car went out of control and rolled over, killing Mrs. Vandercreek and a small daughter, who were among the passengers in the car. Dr. Vandercreek testified that defendant's lights were on low beam and that he did not see the lights nor the car until he was 20 to 30 feet from the intersection.

The defendant, an Indian, had been attending a "sun dance" west of Tyhee and was driving east on Tyhee road for the purpose of getting gas at Tyhee on his way back to Ft. Hall. The defendant testified that his speed at the time of the collision was, "I think 15, something like that." A police officer testified that at the scene, immediately after the accident, defendant said he was "going about 30 to 35 miles an hour." The police made certain tests at the site from which they made a determination of defendant's speed at "between 20 and 25 miles an hour." The Papse car left about 30 feet of skid marks before reaching the point of impact.

The total width of the right of way of Philbin road was 50 feet. The officers determined the point of impact to be 26½ feet from the east right of way line and 23½ feet from the west right of way line. Defendant urges this evidence as showing that Dr. Vandercreek was driving in part upon the left side of the highway. One of the officers testified that the center line was not marked upon the highway, and, it was his opinion that Vandercreek was driving in his right-hand lane where a person would normally drive, and if there had been a center line marked on the highway, "the Vandercreek car would not have been across the white line."

Both sides of the highway at the intersection were marked with stop signs facing traffic approaching on Tyhee road. The stop sign on the west was located five feet west of the west Philbin right of way line. At a point 677 feet west of the west Philbin right of way line, there was located on the Tyhee road, five feet from its south line, a four-foot-square sign, reading: "Caution, Crossroad, Stop Ahead." The letters of the words, "caution" and "crossroad" were eight inches high. The word, "caution" was painted in red; the other words in black, on a yellow background. One officer testified that the caution sign and the stop sign were "illuminated." Whether such lighting was by means of luminous paint or otherwise does not appear from the record.

Defendant testified he did not see the caution sign; that he did not stop at the stop sign; that he stopped about 15 or 20 feet west of the stop sign at a point where he could see through the obstructions on the south side of Tyhee road, and observed the Philbin highway to the south; that he saw no car approaching; that he had not been through the intersection for many years; that the last time he had been through it

there were stop signs on both the Philbin and Tyhee roads; that he did not see the lights from the Vandercreek car nor the car itself until it was too late to avoid the collision; that the only lights he saw were from a car approaching from the east on Tyhee road on the east side of the intersection; that the driver of the car approaching from the east did not dim his lights, and that such lights interfered with defendant's view of the intersection and the traffic signs.

One of the officers testified that, at the scene, defendant told him he thought the stop sign was a yield sign. The officer also testified that there was no obstruction to the view of the Philbin road to the south from the point of the stop sign; that houses, shrubbery, trees, and other vegetation on the south side of the Tyhee road, extending from the stop sign to the west a distance of 300 feet, or more, would obstruct the view of a driver on the Tyhee road during the course of that distance. The officer's testimony is to the effect that one could not see to the south along the Philbin road from the point where defendant testified he stopped to make such observation.

Neither driver had been drinking any intoxicant and neither was exceeding any speed limitation.

Upon the trial the jury was permitted to view the scene of the collision.

The crime of negligent homicide, with the commission of which defendant was charged, is defined by I.C. § 49–1101 as follows:

> "(a) When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide."

The information contains the statutory language and adds thereto the following explanatory allegation of fact: "by failing to stop at a stop sign at the intersection of Tyhee road and Philbin road."

The controlling question presented is whether the evidence is sufficient to support the verdict of the jury and the conviction based thereon.

In State v. Davidson, 78 Idaho 553, 309 P.2d 211, 214, we held that by the enactment of I.C. § 49–1101, supra, the legislature intended to, and did, repeal the earlier involuntary manslaughter statute insofar as it applied to deaths resulting from the operation of motor vehicles in a reckless, careless or negligent manner, and to substitute therefor the crime of negligent homicide as therein defined. In that case we also held that the phrase, "in reckless disregard of the safety of others" imported into the statute the requirement that criminal negligence, and reckless disregard of consequences and of the rights of others, were necessary ingredients in the crime of

negligent homicide. The same rule was applied in State v. Gummerson, 79 Idaho 30, 310 P.2d 362.

The American Law Institute, in its Restatement of the Law of Torts, Vol. 2, § 500, has defined "reckless disregard" as follows:

"The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." At page 1293.

And in explanatory comment, the following is found:

"a. *Unreasonableness of risk.* In order that the actor's conduct may be in reckless disregard of the bodily security of others, it must not only involve a high decree of probability that death or serious bodily harm will result therefrom, but the circumstances must be such that the risk so created is unreasonable." At page 1293.

"b. *Perception of risk.* Conduct cannot be in reckless disregard of the safety of others unless the act or breach of duty is itself intended, notwithstanding that the actor knows of facts which would lead any reasonable man to realize the extreme risk to which it subjects the safety of others. It is reckless for a driver of an automobile intentionally to cross a through highway in defiance of a stop sign if a stream of vehicles is seen to be closely approaching in both directions, but if his failure to stop is due to the fact that he has permitted his attention to be diverted so that he does not know that he is approaching the crossing, he may be merely negligent and not reckless." At page 1294.

"g. *Negligence and recklessness contrasted.* Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency in that reckless misconduct requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a

risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind." At pages 1296–97.

Applying the foregoing rules to the facts in the present case, we conclude that the evidence was sufficient to present an issue for determination by the jury as to whether the conduct of the defendant constituted the driving of his automobile "in reckless disregard of the safety of others," within the meaning of the statute. The fact that defendant's view of Philbin road to his right was obstructed, imposed upon him an additional burden of care, making it imperative that he stop at or near the stop sign, at a point where he could make an effective observation of the traffic on the Philbin road, before entering the traveled portion of that through highway. The duty so to stop and observe existed regardless of the stop sign. Coughran v. Hickox, 82 Idaho 18, 348 P.2d 724.

The jury was entitled to disbelieve defendant's testimony that he stopped 15 or 20 feet before reaching the stop sign, in view of other testimony as to the extent of the obstruction to his view at that point, and the extent of the skid marks left by his automobile, which commenced at a point about six feet before the skidding wheels reached a position opposite the stop sign. The evidence is sufficient to support findings by the jury that the defendant knew he was approaching a through highway; that it was his duty to stop, make observation of the traffic thereon, and not to enter upon such highway until he could do so without endangering others traveling thereon; that he was aware of the obstructions to his view from a distance of 300 feet or more to the west until he reached the position of the stop sign; and that such facts and circumstances which were known to the defendant, or which the defendant had reason to know, would lead a reasonable man to realize that in driving onto Philbin road without stopping and observing the traffic thereon, not only would create an unreasonable risk of bodily harm to persons traveling on Philbin road, but also would involve a high degree of probability that substantial harm would result to others by reason thereof. The evidence discloses "a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it, or with knowledge of facts which would disclose this danger to any reasonable man." 2 Restatement of Torts, § 500.

State v. Cope, 204 N.C. 28, 167 S.E. 456, 458, involved a charge of manslaughter. An automobile driven by defendant at night struck and killed a pedestrian on the highway. The evidence was conflicting as to whether the lights on the car were burning, dimmed, or out, and as to the speed, variously estimated at from 40 to 60 miles per hour. The court sent the case back for a new trial because the instructions given would permit a conviction based upon ordinary negligence. The applicable principles were stated to be:

"* * * an unintentional violation of a prohibitory statute or ordinance, unaccompanied by recklessness or probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, is not such negligence as imports criminal responsibility."

But "An intentional, willful, or wanton violation of a statute or ordinance, designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence." 167 S.E. at page 458.

The same principles were again applied by the North Carolina court in State v. Wooten, 228 N.C. 628, 46 S.E.2d 868. In that case two drivers proceeding in opposite directions were violating the statute requiring each to yield one-half of the main traveled portion of the roadway, and collided in the middle of the road, killing passengers in both cars. In upholding the conviction of both drivers, the court said:

"* * * And the evidence tends to show, and is sufficient to justify the jury in finding that at the time of the collision, even though the violation of the statute G.S. § 20–148 be unintentional, each of the defendants was driving his automobile carelessly and heedlessly, without due caution and circumspection and in a manner so as to endanger or be likely to endanger persons on the highway when tested by the rule of reasonable prevision. Injury and death did ensue. In all it was a question for the jury." 46 S.E.2d at page 872.

When death results from the violation of a statutory provision, intended for the protection of life and limb on the public highway, knowingly committed under circumstances involving an unreasonable risk of bodily harm to others and a high degree of probability that such harm will result, a conviction of negligent homicide is warranted. State v. Coburn, 82 Idaho 437, 354 P.2d 751; State v. Gummerson, 79 Idaho 30, 310 P.2d 362; State v. Davidson, 78 Idaho 553, 309 P.2d 211; State v. Monteith, 53 Idaho 30, 20 P.2d 1023; State v. Brooks, 49 Idaho 404, 288 P. 894; People v. Pryor, 17 Cal.App.2d 147, 61 P.2d 773; People v. Nowell, 45 Cal.App.2d Supp. 811, 114 P.2d 81; People v. Murray, 58 Cal.App.2d 239, 136 P.2d

389; People v. Wilson, 78 Cal.App.2d 108, 177 P.2d 567; State v. Partridge, 47 Wash. 2d 640, 289 P.2d 702; State v. Harvey, Wash., 356 P.2d 726; State v. Bowman, Wash. 356 P.2d 999; People v. Ingersoll, 245 Mich. 530, 222 N.W. 765; People v. Toohey, 319 Ill. 113, 149 N.E. 795; People v. Sticht, Co.Ct., 139 N.Y.S.2d 667; State v. Elliott, 1 Terry Del., 250, 8 A.2d 873; State v. Rachels, 218 S.C. 1, 61 S.E.2d 249; Smith v. State, 197 Miss. 802, 20 So.2d 701, 161 A.L.R. 1, annotation 11; Annotation 52 A.L.R.2d 1337, §§ 23 and 32; 61 C.J.S. Motor Vehicles § 659c; 5A Am.Jur., Automobiles and Highway Traffic, §§ 1127, 1132, 1136, 1138, 1140, 1141, 1142. Compare: People v. Green, 368 Ill. 242, 13 N.E.2d 278, 115 A.L.R. 348; Shorter v. State, 234 Ind. 1, 122 N.E.2d 847, 52 A.L.R. 1329; People v. Decina, 2 N.Y.2d 133, 157 N.Y.S.2d 558, 138 N.E.2d 799, 63 A.L.R.2d 970, annotation 983.

Negligent homicide as defined by our statute (I.C. § 49-1101) is a misdemeanor. State v. Davidson, 78 Idaho 553, 309 P.2d 211. A conviction thereunder does not require proof of felonious conduct. Pribyl v. State, 165 Neb. 691, 87 N.W.2d 201.

Where, as here, the jury's verdict is supported by substantial competent evidence it will not be disturbed by this court on appeal. State v. Anderson, 82 Idaho 293, 352 P.2d 972; State v. Polson, 81 Idaho 147, 339 P.2d 510.

Judgment affirmed.

SMITH, KNUDSON, McQUADE and McFADDEN, JJ., concur.