IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 45542

| | | |
|---|---|---|
| BALTAZAR GOMEZ, JR., ESTELLA GRIMALDO, ELENA GOMEZ, ELIZABETH FREEMAN, VERONICA FERRO, ZANDRA PEDROZA, ALICIA GOMEZ, YESENIA GOMEZ, and BALTAZAR GOMEZ, III, | ) ) ) ) ) ) ) | |
| | ) | Boise, June 2019 Term |
| | ) | Opinion filed: December 20, 2019 |
| | ) | |
| | ) | Karel A. Lehrman, Clerk |
| Plaintiffs-Appellants, | ) | |
| | ) | SUBSTITUTE OPINION. THE |
| v. | ) | COURT'S PRIOR OPINION |
| | ) | DATED DECEMBER 19, 2018 |
| CROOKHAM COMPANY, an Idaho | ) | IS HEREBY WITHDRAWN. |
| corporation, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Thomas J. Ryan, District Judge.

The judgment of the district court is affirmed in part and reversed in part.

Skaug Law, PC, Nampa and Dinius & Associates, PLLC, Nampa, for Appellants. Kevin E. Dinius argued.

Elam & Burke, PA, Boise, for Respondent. James A. Ford argued.

_____

MOELLER, Justice.

Mrs. Francisca Gomez died as the result of a horrific industrial accident that occurred while she was cleaning a seed sorting machine as part of her employment with the Crookham Company ("Crookham"). Her family (the Gomezes) received worker's compensation benefits and also brought a wrongful death action. The Gomezes now appeal the decision of the district court granting Crookham's motion for summary judgment on all claims relating to Mrs. Gomez's death. The district court held that Mrs. Gomez was working within the scope of her employment at the time of the accident, that all of the Gomezes' claims are barred by the exclusive remedy rule of Idaho worker's compensation law, that the exception to the exclusive remedy rule provided by Idaho Code section 72-209(3) does not apply, and that the Gomezes' product

1

liability claims fail as a matter of law because Crookham is not a "manufacturer." We affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the death of Mrs. Gomez during a shift at Crookham on January 20, 2016. Crookham is a wholesale seed distributor located in Caldwell, Idaho. Mrs. Gomez was an employee of Crookham for more than thirty years before her death.

In early 2015, Crookham determined that a new picking table was necessary to sort seeds more efficiently. A Crookham employee fabricated a new table and it was installed in the company's "Scancore" room in late 2015. The new picking table's drive shaft was not fully guarded and did not adhere to the required lockout-tagout procedures, even though OSHA had previously cited Crookham for violating machine guard safety standards and lockout-tagout protocol with its former picking tables.[1]

On January 20, 2016, Mrs. Gomez was assigned to work in the Scancore room. The employees' duties in that room included cleaning the picking table between sorting batches of different varieties of seeds. To clean the picking table, employees used an air wand to blow seeds upward from beneath the table while the machine is operating. During her shift, Mrs. Gomez was under the picking table attempting to clean it when the table's exposed drive shaft caught her hair and pulled her into the machine. She died as a result of her injuries. OSHA subsequently investigated Crookham and issued "serious" violations to the company because it exposed its employees to the unguarded drive shaft without implementing lockout-tagout procedures.

In July 2016, the Gomezes filed their Complaint and Demand for Jury Trial. The complaint set forth nine causes of action: (1) negligent design; (2) failure to warn; (3) strict liability–defective product; (4) strict liability–failure to warn; (5) breach of implied warranty of fitness and/or merchantability; (6) breach of express warranty; (7) strict liability–abnormally dangerous activity; (8) negligence/negligence per se; and (9) wrongful death.

Crookham moved for summary judgment. The district court granted the motion, holding that all of the Gomezes' claims were barred by the exclusive remedy rule of worker's compensation law, that the unprovoked physical aggression exception to the exclusive remedy

---

[1] Lockout is the use of a device, such as a lock, on a machine to ensure that the machine cannot be operated until the lockout device is removed. OSHA, 29 C.F.R. § 1910.147(b) (2018). Tagout is the placement of a prominent warning, such as a tag, on the machine to signal that the machine may not be operated until the tag is removed. *Id.* OSHA requires lockout-tagout procedures specifically to prevent injury to employees while repairing or cleaning machinery. *Id.* at § 1910.147(a)(1)(i).

rule did not apply, that Mrs. Gomez was working within the scope of her employment when the accident occurred, and that the Gomezes' product liability claims failed because Crookham was not a manufacturer of the picking table for product liability purposes. The district court entered a final judgment dismissing all of the Gomezes' claims on October 3, 2017. The Gomezes timely appealed.

## II. STANDARD OF REVIEW

"This Court's review of a trial court's ruling on a motion for summary judgment is the same standard used by the trial court in originally ruling on the motion." *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 209, 76 P.3d 951, 953 (2003). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Taylor v. Taylor*, 163 Idaho 910, 916, 422 P.3d 1116, 1122 (2018) (citing I.R.C.P. 56(a)). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Marek v. Hecla, Ltd.*, 161 Idaho 211, 220, 384 P.3d 975, 984 (2016); *see also Houpt v. Wells Fargo Bank, Nat. Ass'n*, 160 Idaho 181, 186, 370 P.3d 384, 389 (2016) ("If reasonable people could reach different conclusions or inferences from the evidence, summary judgment is inappropriate."). "This Court liberally construes the record in favor of the party opposing the motion for summary judgment and draws any reasonable inferences and conclusions in that party's favor." *Robison*, 139 Idaho at 209, 76 P.3d at 953.

Regarding the interpretation of statutes, we have said,

> [t]he interpretation of a statute is a question of law over which this Court exercises *de novo* review. The objective of statutory interpretation is to derive legislative intent. Legislative intent begins with the literal language of the statute. To determine the meaning of a statute, the Court applies the plain and ordinary meaning of the terms and, where possible, every word, clause and sentence should be given effect.

*Id.* at 210, 76 P.3d at 954 (internal citations omitted). "Statutes which relate to the same subject are *in pari materia* and they should be construed together to effectuate legislative intent." *Dewey v. Merrill*, 124 Idaho 201, 204, 858 P.2d 740, 743 (1993).

## III. ANALYSIS

The Gomezes contend that because the exclusive remedy rule of Idaho worker's compensation law is found only in Idaho Code section 72-211, it does not bar civil death claims, and that the Industrial Commission does not have exclusive jurisdiction over civil death claims.

3

They alternatively argue that the exception to the exclusive remedy rule found in Idaho Code section 72-209(3) permits them to proceed with their claims because Crookham committed an unprovoked physical aggression against Mrs. Gomez. They further argue that Mrs. Gomez's death does not meet the definition of "accident" and that Crookham is a manufacturer of the picking table at issue for product liability purposes.

**A. The exclusive remedy rule bars the Gomezes' civil death claim, unless the exception to the exclusive remedy rule applies.**

The Gomezes argue that Idaho Code section 72-211 alone provides the exclusive remedy rule in Idaho, that the exclusive remedy rule does not bar civil death claims, and that the Industrial Commission does not have exclusive jurisdiction over work-related death claims.

1. Idaho Code sections 72-209 and 72-211 comprise the exclusive remedy rule.

The Gomezes argue that Idaho Code section 72-211 alone provides the exclusive remedy rule in Idaho. We find that Idaho Code sections 72-209(1) and 72-211 together comprise the exclusive remedy rule of Idaho worker's compensation law.

Each section of the worker's compensation law is interpreted "*in pari materia.*" *Roe v. Albertson's Inc.*, 141 Idaho 524, 530, 112 P.3d 812, 818 (2005). Therefore, the statutes should be "taken together and construed as one system, and the object is to carry into effect the intention." *Grand Canyon Dories v. Idaho State Tax Comm'n*, 124 Idaho 1, 4, 855 P.2d 462, 465 (1993) (quoting *Meyers v. City of Idaho Falls*, 52 Idaho 81, 89–90, 11 P.2d 626, 629 (1932)). "For the purpose of learning the intention, all statutes relating to the same subject are to be compared, and . . . brought into harmony by interpretation." *Id.*

Idaho Code section 72-209 was added to the worker's compensation law in 1971 when the laws were recodified under Title 72. *Roe*, 141 Idaho at 530, 112 P.3d at 818. "[B]oth the police power section and the exclusive remedy section remained part of the Act." *Id.* (referring to what are now Idaho Code sections 72-201 and 72-211). Regarding Idaho Code section 72-209, we have explained: "Prior to 1971 there was no similar provision, although this provision appears to be the employer's mirror image of I.C. § 72-211." *Id.*

Idaho Code section 72-211 provides that "the rights and remedies herein granted to an employee on account of an injury or occupational disease for which he is entitled to compensation under this law shall exclude all other rights and remedies . . . ." Idaho Code section 72-209(1) states that "the liability of the employer under this law shall be exclusive and in place of all other liability of the employer to the employee . . . ." In sum, Idaho Code section

4

72-211 specifies that worker's compensation benefits are an employee's exclusive remedy where the employee is entitled to such benefits, and Idaho Code section 72-209(1) reinforces this remedy by requiring an employer to provide benefits even where another party is also liable to the employee. Idaho Code section 72-209(1) also limits the employer's liability for claims covered under the law to worker's compensation benefits. When read *in pari materia*, it is clear that these statutes were intended to operate in harmony—"[b]oth provisions state that if an employer is liable under the worker's compensation law then all other liability is excluded." *Roe*, 141 Idaho at 530, 112 P.3d at 818. Thus, we reaffirm our statement in *Venters v. Sorrento Delaware, Inc.*: "Counterbalancing the employers' burden of providing 'sure and certain relief' to injured workers, the Act limits the employers' exposure to tort liability through I.C. §§ 72-209(1) and 72-211. These limitations on the scope of employee remedies are together referred to as the 'exclusive remedy rule.' " 141 Idaho 245, 248–49, 108 P.3d 392, 395–96 (2005).

2. The exclusive remedy rule bars civil death claims and the Industrial Commission has exclusive jurisdiction over such claims unless the exception provided by Idaho Code section 72-209(3) applies.

The Gomezes argue that the exclusive remedy rule does not bar civil claims for a work-related death and that the Industrial Commission does not have exclusive jurisdiction over work-related death claims. Because these two concepts are inextricably connected, the Gomezes' arguments are essentially the same. The result the Gomezes seek is a determination that they have a remedy in civil court for Mrs. Gomez's death, without reliance on an exception to the exclusive remedy rule.

As previously stated, Idaho Code sections 72-209(1) and 72-211 comprise the exclusive remedy rule. *Venters*, 141 Idaho at 248–49, 108 P.3d at 395–96. Idaho Code section 72-209(1) unambiguously limits an employer's liability for a work-related injury, occupational disease, or death to worker's compensation benefits. Yet, the Gomezes posit that the exclusive remedy rule does not include work-related death claims because Idaho Code section 72-211 does not expressly include such claims. While the statute does not explicitly include death claims, it is subject to Idaho Code section 72-223, which does expressly include death claims.

Idaho Code section 72-223 provides that an employer is liable to pay worker's compensation for a work-related injury, occupational disease, or death, even though a third party is also liable to pay damages. The statute also provides that an employee may have a remedy outside of the worker's compensation law against the third party; however, employers are not

5

considered third parties. I.C. § 72-223; *Robison*, 139 Idaho at 211, 76 P.3d at 955 ("[P]arties deemed employers for the purpose of being liable for worker's compensation benefits under I.C. § 72-102 are the same parties deemed immune from third-party tort liability under I.C. § 72-223."). Consequently, we hold that Idaho Code section 72-211 limits an employee's remedy against an employer for a work-related death to worker's compensation benefits. We have previously explained the apparent rationale for this approach:

> And lest it be argued that this rule of law may in some cases deprive persons of remedy for damages which they had prior to the passage of the Workmen's Compensation Law, we note that that law has a dual policy . . . to provide "not only for employees a remedy which is both expeditious and independent of proof of fault, but also for employers a liability which is limited and determinative."

*Stample v. Idaho Power Co.*, 92 Idaho 763, 766, 450 P.2d 610, 613 (1969) (quoting *Smither & Co. v. Coles*, 242 F.2d 220, 222 (D.C. Cir. 1957)).

As to the Industrial Commission's jurisdiction, the Gomezes assert that the plain meaning of Idaho Code section 72-201 indicates legislative intent to exclude death claims from the Industrial Commission's exclusive jurisdiction because the word "death" is not expressly included in the statute. The Gomezes assert instead that the Industrial Commission has concurrent jurisdiction over industrial death claims, which allows the Gomezes to both collect death benefits and to also bring a civil action arising from Mrs. Gomez's death.

The Gomezes' contention fails when Idaho Code section 72-201 is read in conjunction with Idaho Code sections 72-209 and 72-211, as intended: "Idaho Code §§ 72-201, 72-209 and 72-211 should not be read in isolation from one another." *Roe*, 141 Idaho at 530, 112 P.3d at 818. "Each section is part of the worker's compensation law and we interpret them *in pari materia*." *Id.* Idaho Code section 72-201 states, in part: "The common law system governing the remedy of workmen against employers for injuries received and occupational diseases contracted in industrial and public work is inconsistent with modern industrial conditions." The statute also provides that "all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished . . . ." I.C. § 72-201. As already discussed, Idaho Code sections 72-209(1) and 72-211 comprise the exclusive remedy rule and include death claims.

Thus, when Idaho Code sections 72-201, 72-209, and 72-211 are read together, it is evident that the Legislature intended that the Industrial Commission would have exclusive jurisdiction over death claims arising out of and in the course of employment. As we have

6

previously noted, "[i]f a worker is entitled to benefits, the operation of the exclusive remedy rule generally grants the Industrial Commission exclusive jurisdiction over the matter." *Dominguez ex rel. Hamp v. Evergreen Res., Inc.*, 142 Idaho 7, 12, 121 P.3d 938, 943 (2005); *see also Stample*, 92 Idaho at 766, 450 P.2d at 613 (holding that courts do not have jurisdiction over a death claim when the claim is covered under worker's compensation law); *accord*, *Meisner v. Potlatch Corp.*, 131 Idaho 258, 261, 954 P.2d 676, 679 (1998). We say "generally" because the exclusive remedy rule is not absolute. *Dominguez ex rel. Hamp*, 142 Idaho at 11, 121 P.3d at 942. Only when an exception applies, does the Industrial Commission have concurrent jurisdiction with the courts over the claim. *Id.* Thus, because the Gomezes were entitled to (and indeed did receive) worker's compensation benefits for Mrs. Gomez's death, the Industrial Commission had exclusive jurisdiction over their claim, unless an exception to the exclusive remedy rule applies. We thus turn our attention to the Gomezes' claim that the exception provided by Idaho Code section 72-209(3) applies to their claim.

**B. The trial court erred when it failed to consider whether Crookham committed an act of unprovoked physical aggression upon Mrs. Gomez by consciously disregarding knowledge that an injury would result.**

The exception to the exclusive remedy rule found in Idaho Code section 72-209(3) permits an employee to pursue a separate civil action against an employer if the employer commits an act of "wilful or unprovoked physical aggression" against the employee. The employee bears the burden of showing that the exception applies. *Marek*, 161 Idaho at 215, 384 P.3d at 979. Where the exception applies, the employee is "permitted to collect worker's compensation benefits for which he is eligible *and* to bring a cause of action against his employer outside the worker's compensation system." *Dominguez ex rel. Hamp*, 142 Idaho at 12, 121 P.3d at 943. In such cases, damages awarded in the civil action would be reduced by the amount paid through worker's compensation to prevent a double recovery. *Id.* At issue here is whether Crookham's conduct amounts to an act of willful or unprovoked physical aggression against Mrs. Gomez.

As we have recognized, "[t]he Worker's Compensation Act was a compromise between injured workers and their employers and was specifically intended to remove industrial accidents from the common law tort system." *Maravilla v. J.R. Simplot Co.*, 161 Idaho 455, 462, 387 P.3d 123, 130 (2016); *see also Yount v. Boundary Cnty.*, 118 Idaho 307, 307, 796 P.2d 516, 516 (1990) ("[S]uch being the *quid pro quo* for eliminating the previous remedy of seeking a tort

7

recovery from employers."). As the former Chairman of the Idaho Industrial Commission explained,

> [Worker's compensation] was considered the great compromise between the employers and employed. Both master and servant had suffered under the old system of common law, even though the master was required to maintain a safe workplace. Both wanted peace. The master, in exchange for limited liability, was willing to pay on some claims in the future, even though there had been no liability at all in the past. The servant was willing, not only to give up trial by jury, but to accept far less than the worker often won in court; provided he or she was sure of getting the small sum without having to fight for it. All agreed that the blood of the worker was the cost for production, that the industry should bear the charge.

*Jose Luis Reyes, Claimant*, No. IC 94-900858, 1997 WL 857497, at *7 (Idaho Indus. Comm'n July 15, 1997) (Kerns, Chairman, dissenting).

To promote the efficacy of this "great compromise," the Idaho Legislature ensured that worker's compensation benefits would, in most circumstances, be the exclusive remedy for an injured worker. I.C. § 72-209(1) ("[T]he liability of the employer under this law shall be exclusive and in place of all other liability of the employer to the employee . . . ."). However, under section 72-209(3), the Legislature provided an opportunity for an injured worker to bring a claim against her employer outside of the worker's compensation system in very limited circumstances—*i.e.*, where the employer commits an act of "wilful or unprovoked physical aggression" against the employee. The legislative history behind section 72-209(3) provides insight into the Legislature's intent in adopting this exception. In 1969, the Legislature undertook to revamp Idaho's worker's compensation scheme to comport with modern working conditions. *See* LEGIS. COUNCIL, COMM. ON WORKMEN'S COMP.–SOC. SEC., MINUTES, at 5–9 (Idaho June 2, 1969). As a result, it instructed the Legislative Council's Committee on Workmen's Compensation (Committee) to conduct a "comprehensive study of the entire field of workmen's compensation, including industrial safety and rehabilitation of industrially injured workmen . . . and to report the results thereof to the Legislature as soon as completed." *Id.* At that time, the Council of State Governments had promulgated a model code to assist states in updating their worker's compensation laws. *See* COUNCIL OF STATE GOV'TS, WORKMEN'S COMPENSATION AND REHABILITATION LAW 1 (*reprint from* SUGGESTED STATE LEGISLATION) (1963). The Committee thoroughly reviewed the model code and recommended its adoption in a way that would "fit the

needs of Idaho." LEGIS. COUNCIL, COMM. ON WORKMEN'S COMP.–SOC. SEC., MINUTES, at 120 (Idaho Aug. 22, 1969).

A comparison of the exception to the exclusive remedy rule provided in the model code with that found in section 72-209(3) demonstrates that the Legislature provided broader protection to Idaho workers than what was proposed by the Council of State Governments. The exception in the model code provides in relevant part: "[T]he exemption from liability given an employee, officer or director . . . shall not apply in any case where the injury or death is proximately caused by the willful *and* unprovoked physical aggression of such employee, officer or director." WORKMEN'S COMP. AND REHAB. LAW § 10(a) (emphasis added). Idaho Code section 72-209(3) provides, in relevant part:

> The exemption from liability given an employer by this section shall also extend to the employer's surety and to all officers, agents, servants and employees . . . provided that such exemptions . . . shall not apply in any case where the injury or death is proximately caused by the wilful or unprovoked physical aggression of the employer, its officers, agents, servants or employees . . . .

Thus, the Legislature incorporated much of the model code's language from section 10(a) into section 72-209(3), but modified it in two important respects. First, the Legislature included employers in the exception so that they may be held liable outside of worker's compensation for committing an act of willful or unprovoked physical aggression against an employee. Second, the Legislature replaced the "and" between "willful and unprovoked" with "or," so that an employee may satisfy the exception by proving that his employer committed an act of either willful *or* unprovoked physical aggression against him. These modifications provide greater opportunity for employees to meet the exception, and thus, broaden the protection afforded to Idaho's workers.

Notwithstanding the broader protection that the Legislature provided employees with section 72-209(3),[2] we recognize that, given the "great compromise" that the worker's compensation scheme embodies, claimants seeking to assert a claim under this exception must meet a high bar. The case law surrounding section 72-209(3) demonstrates our commitment to that principle. *See Barrett v. Hecla Mining Co.*, 161 Idaho 205, 208–09, 384 P.3d 969, 972–73 (2016); *Marek*, 161 Idaho at 219, 384 P.3d at 983; *DeMoss v. City of Coeur D'Alene*, 118 Idaho 176, 179, 795 P.2d 875, 878 (1990); *Kearney v. Denker*, 114 Idaho 755, 756, 760 P.2d 1171,

---

[2] Many other states have also enacted a similar, yet narrower, exception to the exclusive remedy rule. *See Worker's Compensation Acts and Exception to the Exclusivity Bar: A 50 State Survey*, TRESSLER, LLP (June 23, 2016).

1172 (1988). Further, because the Legislature did not define the terms "wilful," "unprovoked," or "physical aggression," as they are used in the statute, several of our decisions regarding the exception have focused on defining those terms and crafting a test to determine when the exception to the exclusive remedy rule applies. *See Marek*, 161 Idaho at 218, 384 P.3d at 982; *DeMoss*, 118 Idaho at 179, 795 P.2d at 878; *Kearney*, 114 Idaho at 757, 760 P.2d at 1173. In *Kearney*, we determined that "[t]o prove aggression there must be evidence of some offensive action or hostile attack. It is not sufficient to prove that the alleged aggressor committed negligent acts that made it substantially certain that injury would occur." 114 Idaho at 757, 760 P.2d at 1173. We expanded on this explanation in *Marek*, stating that "negligence—no matter how gross—is insufficient to trigger the exclusivity exception under section 72-209(3)." 161 Idaho at 220, 384 P.3d at 984.

In *Marek*, we also discussed at length the terms "wilful" and "unprovoked" in relation to physical aggression. *Id.* In so doing, we explained that "[a]n act of 'willful physical aggression' requires a level of intent that is deliberate and purposeful." *Id.* at 216, 384 P.3d at 980. "Under such a standard, an employee must show the employer wished a specific individual employee harm and then effectuated some means appropriate to that end." *Id.* at 217, 384 P.3d at 981. Regarding the unprovoked physical aggression standard, we clarified that,

> [a]n act of "unprovoked physical aggression," . . . is one lacking in motive, deliberation, or specific purpose. Thus, opposed to the willful standard, the unprovoked standard does not require a showing that the employer had a specific intent or desire to harm a specific employee. . . . [R]ather the employee must only show the employer *actually knew or consciously disregarded knowledge* that employee injury would result from the employer's action. In other words, again, looking to our prior definition of physical aggression, an act of "unprovoked physical aggression" is one where the employer (1) committed an offensive action or hostile attack (2) aimed at the bodily integrity of the employee with (3) an unprovoked, i.e., general, intent to injure an employee.

*Id*. (emphasis added). It is evident from this explanation that our understanding of the term "aggression" has evolved since *Kearney*, which was decided in 1988 on the basis that the injured employee was not physically "attacked" by her employer. *See Kearney*, 114 Idaho at 757, 760 P.2d at 1173.

In *Marek*, we recognized that aggression towards an employee may come in forms other than an outright attack. To provide an implausible, yet illustrative example, were an aquarium owner to order an unwitting employee to clean a tank swarming with sharks, that would qualify

as an act of unprovoked physical aggression by the employer under section 72-209(3) because the employer would surely know that there was a high risk of death or injury to the employee. Germane to this appeal is our attempt in *Marek* to clarify the meaning of "unprovoked." There, we stated that to prove an act of unprovoked physical aggression, "the employee must only show the employer actually knew *or consciously disregarded knowledge* that employee injury would result from the employer's action." 161 Idaho at 217, 384 P.3d at 981 (emphasis added). By introducing the phrase "consciously disregarded knowledge" into the analysis, we concluded that the employer did not commit an act of unprovoked physical aggression against its employee because there was "no evidence in the record that would support a finding that [the employer] *had actual knowledge*" that the employee's injury would occur.[3] *Id.* at 219, 384 P.3d at 983 (emphasis added).

This appeal presents an opportunity for the Court to flesh out the circumstances under which the consciously disregarded knowledge test might be satisfied. While "consciously disregarded knowledge" has only been a part of our jurisprudence since 2016, we acknowledge that it has proven challenging to apply in practice. In essence, it provides a narrow exception to the exclusive remedy rule in cases not involving either a direct attack by the employer or knowledge that the employee would be harmed by the required work activity when it can be established that the employer consciously disregarded the risk of injury. By using the disjunctive "or" between the two alternatives—"knew *or* consciously disregarded knowledge"—the court in *Marek* clearly left open a narrow, yet alternate, pathway to recovery for employees in extreme cases where it would be unreasonable to assume the employer was completely unaware of an obvious and grave risk to an employee's life and limb. Returning to the shark tank analogy, just as an employer would be liable if it knowingly ordered an unwitting employee into a tank of sharks, it would likewise be liable if it consciously disregarded reports that sharks were in the tank yet ordered its employee into the tank anyway.

Turning again to the Gomezes' claim that Crookham committed an act of unprovoked physical aggression against Mrs. Gomez under section 72-209(3), the Gomezes contend that Mrs. Gomez was killed because Crookham failed to follow safety procedures with the picking table that she was cleaning. The Gomezes produced evidence showing that, after Mrs. Gomez's

---

[3] We also found that "the evidence presented tends to show the opposite is true and [the employer] thought the stope was safe." *Marek*, 161 Idaho at 219, 384 P.3d at 983.

death, OSHA issued "serious" violations and fined Crookham for its lack of lockout-tagout procedures with the picking table and for its failure to properly guard the drive shaft on the table. They also produced evidence that OSHA had previously issued similar violations to Crookham for its older picking tables. Further, the Gomezes' expert provided a report concluding that Crookham's conduct was intentional, negligent, and reckless, and that it was a foregone conclusion that its conduct would result in injury.[4] Nevertheless, the district court granted summary judgment to Crookham on the basis that the Gomezes failed to prove that Crookham had "actual knowledge" that Mrs. Gomez's injury would occur as required in *Kearney*; however, it failed to conduct the more nuanced standard set forth in *Marek*, *i.e.*, whether Crookham consciously disregarded knowledge that an injury would occur to its employee.[5]

While it may be argued that one cannot consciously disregard knowledge that one never possessed, the term "consciously disregard knowledge," as used in *Marek*, should be interpreted more broadly than that. Having no actual knowledge of a danger to employees, as opposed to consciously disregarding knowledge of a danger, are not synonymous. The point of the consciously disregarded knowledge exception is to take into account cases where an employer was aware of the danger, but consciously decided to ignore it. For example, one who consciously disregards knowledge of a risk may have been made aware of the risk, but failed to act appropriately. Such actors who turn a blind eye to known dangers remain liable under the exception to the statute because they consciously disregarded a known risk. In effect, they are attempting to insulate themselves from liability through feigned ignorance, thereby engaging in a perverse form of plausible deniability—if they claim they "saw no evil," then there is no evil. Our ruling in *Marek* essentially rejects this approach because consciously disregarding knowledge of grave danger can be a very real act of unprovoked physical aggression.

The Court is mindful of the dissent's view that the majority has engaged in "policy-making," a barely veiled accusation of judicial activism. However, the essence of the Court's decision merely explains the application of this Court's prior decision in *Marek*, a precedent which has now stood for over three years. As with this Court's decision in *Marek*, the legislature remains free to adjust the policy as it sees fit. The dissent improperly focuses on the fact that the

---

[4] The Gomezes also attempted to support their claims with information that the district court struck as inadmissible evidence. The stricken information is excluded from this section.

[5] Although the district court cited to *Marek* earlier in its decision, it failed to reference the "consciously disregarded knowledge" standard and focused solely on "knowledge."

12

decision in *Marek* was based on a three-justice majority. While it is true that only one of the justices that participated in that decision still remains on the Court—notably its author—that is no reason to abandon the precedent. Principles of stare decisis, like judicial restraint, compel us to not lightly reject precedent merely because there has been a change in the makeup of the Court or because the precedent was not unanimous. While the dissenting opinion makes it clear that its author would have decided *Marek* differently, much more than mere disagreement is needed to overturn established precedent. *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990) ("[T]he rule of stare decisis dictates that we follow [controlling precedent], unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice.")

Given the totality of the evidence in this case, which includes prior OSHA violations directly related to the picking tables, we conclude that the district court erred by failing to consider whether Crookham consciously disregarded information suggesting a significant risk to its employees working at or under the picking tables, which were neither locked nor tagged out, as they existed on the date of the accident. On this basis, the decision of the district court granting summary judgment to Crookham must be reversed and remanded. On remand, the trial court must apply the proper standard for proving an act of unprovoked physical aggression as it is set forth in this section by determining whether there is a genuine issue of material fact as to whether Crookham consciously disregarded knowledge of a serious risk to Mrs. Gomez.

## C. We will not address the Gomezes' contention that death does not fall under the definition of "accident" in Idaho Code section 72-102(18)(b).

The Gomezes assert that their argument to the district court that Mrs. Gomez's injury did not occur during the course and scope of her employment required an analysis of the definition of "accident" provided by Idaho Code section 72-102(18)(b). In this appeal, the Gomezes argue that "accident" does not include injuries that result in death. The district court rejected the Gomezes' argument because "plaintiffs admit that Mrs. Gomez was killed in the course and scope of her employment" in their complaint, and "[t]he Idaho Industrial Commission has paid out workers compensation benefits" to Mrs. Gomez's spouse and dependent son. Because the Gomezes admitted in their complaint that Mrs. Gomez was killed during the course and scope of her employment, we will not address this issue on appeal.

**D. Crookham is not a manufacturer of the picking table under the Idaho Product Liability Reform Act.**

The Gomezes argue that Crookham is a manufacturer of the picking table for product liability purposes under Idaho Code section 6-1402(3), because the table is a component part of the seeds that Crookham produces.

Under Idaho Code section 6-1402, a "product seller" is defined as "any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption." I.C. § 6-1402(1). A "manufacturer" is a "product seller who designs, produces, makes, fabricates, constructs, or remanufactures the relevant product or component part of a product before its sale to a user or consumer." I.C. § 6-1402(2). A "product" is "any object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce." I.C. § 6-1402(3). Idaho Code section 6-1402 does not define component parts, but the Restatement (Third) of Torts provides that "[p]roduct components include raw materials, bulk products, and other constituent products sold for integration into other products." RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 5 (1998).

The Gomezes' argument fails because the picking table at issue is neither a product nor a component part of a product. The picking table was not produced for introduction into trade or commerce, nor was it sold for integration into other products. Because the picking table was neither a product nor a component part, Crookham is not a "manufacturer" of the picking table at issue under the Idaho Product Liability Reform Act.

**E. The Gomezes are not entitled to attorney fees on appeal.**

The Gomezes request attorney fees pursuant to Idaho Code sections 12-120 and 12-121. Under both statutes, the Gomezes must prevail on appeal to recover their attorney fees. I.C. §§ 12-120, -121. "Where both parties prevail in part on appeal, this Court may deny fees." *Caldwell v. Cometto*, 151 Idaho 34, 41, 253 P.3d 708, 715 (2011). Both Crookham and the Gomezes prevailed in part on appeal. Accordingly, we decline to award attorney fees to the Gomezes. As a result, it is unnecessary to discuss whether the Gomezes would prevail under either statute.[6] *Id.*

---

[6] We note, however, that the Gomezes' request for an award of attorney fees under Idaho Code section 12-120 would fail, as they did not cite the specific subsection of the statute upon which they rely. "It is oft repeated by this Court that, '[i]f the party is claiming that a statute provides authority for an award of attorney fees, the party must cite to the statute and, if applicable, the specific subsection of the statute upon which the party relies.' " *Stephen v.*

14

## IV.    CONCLUSION

For the foregoing reasons, the district court's order granting summary judgment to Crookham is affirmed in part and reversed in part. We remand this case for further proceedings consistent with this Opinion.

Chief Justice BURDICK and Justice BEVAN **CONCUR.**

Brody, J., Dissenting

Today the majority rules that the district court erred by failing to consider whether Crookham consciously disregarded knowledge of a significant risk of harm to Mrs. Gomez. The Gomezes have asked the Court to explain what the term "consciously disregarded knowledge" means, acknowledging in their opening brief that they are "hard pressed" to find a working definition of the term and stating that it appears to have been created by this Court without definition in *Marek v. Hecla, Ltd.*, 161 Idaho 211, 384 P.3d 975 (2016). I agree with the Gomezes' observations, but I do not agree with the Court's decision to "flesh out" under what circumstances a "consciously disregarded knowledge test" might be satisfied. Simply put, there is no consciously disregarded knowledge test under Idaho Code section 72-209(3), and the majority in *Marek* got it wrong when they equated "unprovoked physical aggression" (the language that is used in the statute) with an employer's conscious disregard of knowledge that injury would occur. Moreover, the Court's decision today compounds the interpretative error that was made in *Marek*. In its efforts to articulate a workable legal standard, the majority, stating that the Court's understanding of "aggression" has evolved, has moved from conscious disregard of knowledge that injury "*would*" occur (the standard articulated and applied in *Marek*) to conscious disregard of a "significant risk of harm." In effect, the majority's interpretation creates a reckless conduct exception to the exclusive remedy rule. This interpretation goes far beyond the bounds of the plain, usual, and ordinary meaning of the statute at issue. While it may be that employers who consciously disregard significant risks of harm should be held accountable to employees beyond worker's compensation benefits, that decision belongs to the Idaho Legislature, not this Court.  At the end of the day, the plain language of I.C. section 72-209(3)

---

*Sallaz & Gatewood, Chtd.*, 150 Idaho 521, 529, 248 P.3d 1256, 1264 (2011) (quoting *Bream v. Benscoter*, 139 Idaho 364, 369, 79 P.3d 723, 728 (2003)).

limits the Gomezes' recovery to the benefits provided by the worker's compensation system. I would affirm the district court's decision.

The earliest decisions of our Court recognize that we do not interpret statutes based upon our notions of what should have been enacted. *See Copper Co. v. Henderson*, 15 Idaho 635, 639, 99 P. 127, 128 (1908). Likewise, we do not interpret statutes to avoid uncomfortable results. *State v. Osborn*, ___ Idaho ___, 449 P.3d 419, 423 (2019). Rather, our role is to interpret statutes based on the usual, plain, and ordinary meaning of the actual words that are used by the legislature. *Id.* This means that every case involving statutory interpretation must begin with the statute itself.

Section 72-209(3) carves out a narrow exception to the worker's compensation exclusive remedy rule for cases where the injury or death is caused by "wilful or unprovoked physical aggression:"

> The exemption from liability . . . shall not apply in any case where the injury or death is proximately caused by the *wilful or unprovoked physical aggression* of the employer, its officers, agents, servants or employees, the loss of such exemption applying only to the aggressor and shall not be imputable to the employer unless provoked or authorized by the employer or the employer was a party thereto.

I.C. § 72-209(3) (emphasis added).

The Court first interpreted section 72-209(3) over thirty years ago in *Kearney v. Denker*, 114 Idaho 755, 760 P.2d 1171 (1988). In *Kearney*, the plaintiff sued her employer after her foot was partially amputated while she was using a lawnmower. *Id.* at 756, 760 P.2d at 1172. The plaintiff slipped on a wet hillside and her foot came in contact with the mower blade. She sued the employer, alleging that the employer acted willfully, wantonly, and with gross negligence in its construction of the lawnmower. The employee alleged that the employer failed to install certain safety devices (e.g., an automatic cutoff switch) and that it knew the operation of the lawnmower without those devices in place was exceedingly dangerous and that an injury was certain to occur. *Id.*

The Court rejected Kearney's argument that she was entitled to bring suit against her employer outside of the worker's compensation system. The Court explained that under section 72-209(3) there must be evidence of "aggression" which the Court, relying on Webster's Third New International Dictionary, defined as "an offensive action" or "overt hostile attack" *Id.* at 757, 760 P.2d at 1173. The Court held expressly that negligent actions–even where injury was

16

certain to occur–were not enough to satisfy the statutory requirement of aggression: "It is not sufficient to prove that the alleged aggressor committed negligent acts that made it substantially certain that injury would occur." *Id.*

The Court recently revisited section 72-209(3) in *Marek v. Hecla*, *Ltd.*, 161 Idaho 211, 384 P.3d 975 (2016). In *Marek*, two brothers were working in the Lucky Friday Mine when a cave-in occurred. *Id.* at 213-14, 384 P.3d at 977-78. One brother was killed and the other was injured. *Id.* at 214, 384 P.3d at 978. The Mareks and their families sued Hecla outside the worker's compensation system. When Hecla moved for summary judgment, arguing that the Mareks' claims were barred by the exclusive remedy rule, the Mareks responded with the argument that Hecla's failure to have an engineer review and approve the removal of a waste pillar, the failure to heed warnings from experienced employees about the danger of removing the waste pillar, and the failure to perform a safety review and follow safety standards promulgated by the U.S. Mine Safety & Health Administration (MSHA), all constituted willful or unprovoked physical aggression. The Court rejected the Mareks' arguments.

In making that decision, a three-justice majority began by dissecting the phrase "willful or unprovoked physical aggression" into three parts: (1) physical aggression; (2) "willful" physical aggression; and (3) "unprovoked" physical aggression. The majority reaffirmed the definition of aggression that was articulated in *Kearney*, holding that to prove "physical aggression" there must be evidence of: (1) an offensive action or hostile attack aimed at the bodily integrity of the employee; and (2) intention to injure an employee. 161 Idaho at 216, 384 P.3d at 980. The *Marek* majority went on to explain that the difference between "willful" physical aggression and "unprovoked" physical aggression is the intent required. *Id.* The majority reasoned that the term "willful" when applied to physical aggression means that the employer must have deliberately or purposefully committed an act of physical aggression. *Id.* In contrast, the majority held that the term "unprovoked" physical aggression is one lacking in motive, deliberation or specific purpose. *Id.* The majority held:

> Thus, opposed to the willful standard, the unprovoked standard does not require a showing that the employer had a specific intent or desire to harm a specific employee. Under such a standard, an employee is relieved of showing the employer specifically wished the employee harm, rather the employee must only show the employer actually knew or *consciously disregarded knowledge* that employee injury would result from the employer's action.

*Id.* at 217, 384 P.3d at 981 (emphasis added).

Applying this interpretation, the majority held that the district court did not err in dismissing the Mareks' claims because there was no evidence that Hecla intended to harm the brothers or that the employer actually knew the tunnel would collapse as a result of its decisions:

> Here, questions about whether Hecla received warnings that the removal of the stope was dangers or whether it was necessary for the chief engineer to approve the mining plan are immaterial. The question is whether Hecla specifically intended Mike or Pete harm or had actual knowledge that their mining practices would cause the stope to collapse. Even assuming Hecla did receive warnings that its mining practices were unsafe or that it failed to have the chief engineer review the mining, such evidence could, as discussed supra, only support a finding that Hecla was negligent, perhaps even grossly negligent. *However, negligence—no matter how gross—is insufficient to trigger the exclusivity exception under section 72-209(3).* Absent evidence that Hecla specifically intended to harm Mike or Pete or that Hecla had received warnings that amounted to actual knowledge the stope would collapse, such as a report or an internal memo stating as much, the district court did not err in ruling that there were no disputes issues of material fact.

*Id.* at 220, 384 P.3d at 984 (emphasis added).

While the *Marek* court unanimously agreed to affirm the district court's grant of summary judgment, the majority's definition of "unprovoked" physical aggression sparked a special concurrence from Justice Horton that was joined by Justice Eismann. *Id.* at 222, 384 P.3d at 986. Justice Horton declined to join the Court's definition of "unprovoked" physical aggression, explaining that he interpreted the phrase to mean physical aggression that was not precipitated by the words or actions of the employee who was injured:

> I view the word "unprovoked" as used in the statute as comprising the prefix "un-" and the past participle "provoked." The prefix means "not, lack of, the opposite of" or "the reverse or removal of: it is added to verbs to indicate a reversal of the action of the verb ... and to nouns to indicate a removal or release of the thing mentioned or from the condition, place, etc." *Webster's New World Dictionary* 1542 (2d College ed. 1976). The verb "provoke" means "1. to excite to some action or feeling 2. to anger, irritate, or annoy 3. to stir up (action or feeling) 4. to call forth; evoke." *Id.* at 1144. With these definitions in mind, *I interpret the meaning of the participial phrase "unprovoked physical aggression" as "physical aggression occurring in the absence of provocation," i.e., not precipitated by, or resulting from, the words or actions of the employee who has been injured by the employer's physical aggression.*

*Marek v. Hecla, Ltd.*, 161 Idaho 211, 222–23, 384 P.3d 975, 986–87 (2016) (emphasis added).

I agree with Justice Horton's interpretation. From a practical perspective this means that if an employee claims that the exclusive remedy rule does not apply because the employer's conduct constitutes unprovoked physical aggression, the inquiry by the trial court should be: (1) did the employer commit an offensive action or hostile attack against the employee; (2) was the action or attack aimed at the bodily integrity of the employee; and (3) did the employee, by words or action, precipitate the action or attack? Applying this test, I would conclude, just as Justices Horton and Eismann concluded in *Marek*, that Crookham was properly granted summary judgment because there is no evidence of physical aggression. Even the majority in *Marek* agreed that gross negligence on the part of the employer was insufficient to trigger the section 72-209(3) exclusivity exception. *Id.* at 220, 384 P.3d at 984.

While I would end this case by acknowledging that an error was made in *Marek*, the Court takes on the task today of "fleshing out" the consciously disregarded knowledge language that was used. From my perspective, the Court's decision compounds the interpretative error made in *Marek* and moves the law even further away from the plain language of the statute.

Look again at the relevant text of section 72-209(3):

> The exemption from liability . . . shall not apply in any case where the injury or death is proximately caused by the wilful or unprovoked physical aggression of the employer . . . .

Now look at the Court's holding today:

> While it may be argued that one cannot consciously disregard knowledge that one never possessed, the term "consciously disregard knowledge" should be interpreted more broadly than that. Having no actual knowledge of a danger to employees, as opposed to consciously disregarding knowledge of a danger, are not synonymous. *The point of the consciously disregarded knowledge exception is to take into account cases where an employer should have been aware of the danger, but consciously decided to ignore it.* This is significantly different than requiring that the employer knew that an injury *would* occur. For example, one who consciously disregards knowledge of a risk may still have the means to know the danger of the risk, even if he fails to avail himself of those means. Such actors who turn a blind eye to knowable dangers remain liable under the exception to the statute because they consciously kept themselves ignorant of a known risk. In effect, they are attempting to insulate themselves from liability through ignorance, thereby engaging in a perverse form of plausible deniability—if they "see no evil," then there is no evil. Our ruling in *Marek* essentially rejects this approach because consciously disregarding knowledge of grave danger can be a very real act of unprovoked physical aggression.

19

(emphasis added).

There are three points that need to be made. First, there is no "consciously disregarded knowledge exception" anywhere in the plain language of section 73-209(3). The "exception" is for willful or unprovoked physical aggression.

Second, and more importantly, the concept of consciously disregarding knowledge of a danger (the Court inconsistently refers to the level of danger as grave, significant, or substantial) is not a new standard in the law. The Court does not label it as such, but in its effort to explain the conscious disregarded knowledge language used in *Marek*, it has now articulated the standard for recklessness:

> Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency in that *reckless misconduct requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.* It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent.

*Carrillo v. Boise Tire Co.*, 152 Idaho 741, 751, 274 P.3d 1256, 1266 (2012) (citing *State v. Papse,* 83 Idaho 358, 362–63, 362 P.2d 1083, 1086 (1961) (emphasis added). The Idaho Legislature understands the concept of recklessness and knows how to make exceptions for it. For example, the non-economic damages cap set forth in Idaho Code section 6-1603 does not apply to causes of action arising out of "willful or reckless misconduct." The statute states:

> (4) *The limitation of awards of noneconomic damages shall not apply to*:
> (a) Causes of action arising out of willful or *reckless misconduct*.
> (b) Causes of action arising out of an act or acts which the trier of fact finds beyond a reasonable doubt would constitute a felony under state or federal law.

I.C. § 6-1603(4)(a) (emphasis added). My problem with the Court's articulation of a reckless standard today is that section 72-209(3) does not contain a reckless conduct exception to the exclusive remedy rule.

20

Finally, today's holding is expressly contrary to the Court's decision in *Barrett v. Hecla Mining Co*., 161 Idaho 205, 210, 384 P.3d 969, 974 (2016), a decision that was issued the same day that the Court issued its ruling in *Marek*. The *Barrett* case involved another catastrophic event at the Lucky Strike mine. In that decision, the Court held that even though Hecla was aware of a "*significant risk*" that a certain pillar would experience a rock burst, the section 72-209(3) standard was not satisfied because there was no evidence that Hecla had actual knowledge that a rock burst would occur as the appellants were sent to work on the pillar. *Id.* at 210, 384 P.3d at 974. The Court made it clear that there is an important difference between knowledge that injury *will* result and knowledge that it *could*, stating that "knowledge of a potentially dangerous working condition is not sufficient to meet the standard" and "knowledge that there is a high probability that someone 'could die or be seriously injured' is not the same as certain knowledge that someone 'would die or be seriously injured.'" *Id.* at 210 n.4, 384 P.3d at 974 n.4. Today's decision cannot be reconciled with *Barrett*, and there should be an express statement that *Barrett* has been overruled.

Tragic events like the death of Mrs. Gomez raise serious issues about our worker's compensation system. In 1970, about the time that Idaho's system was being overhauled, Congress created a national commission to conduct a comprehensive study of the states' worker's compensation laws. National Comm'n on State Workmen's Compensation Laws, Report of the National Commission on State Workmen's Compensation Laws (1972). The final report of that commission concluded that one of the major objectives of a modern worker's compensation system is encouragement of safety. *Id.* at 15. Does Idaho's system adequately encourage safety? Does it reward employers that make a serious investment in safety programs and professionally engineered equipment? Should it do so? How? Should it immunize employers who do not? Do employers who operate in compliance with safety laws subsidize the employers who choose not to? If an injured employee is authorized to sue outside the worker's compensation system, will the employers' commercial liability policies be available to them for compensation or will their claims be excluded or somehow limited? Overall, do injured employees fare better under a worker's compensation system or our tort system? All of these are important questions, but they are not the province of the Court. Our role is to interpret and apply the laws the Idaho Legislature passes in accordance with the usual, plain, and ordinary meaning

of the words that are used. To do otherwise, enables the Court to function as a policy-making body of five.

STEGNER, J. concurring in the result.

I agree with the majority that the district court erred in granting summary judgment to Crookham and would remand this case as a result. However, I would replace the "consciously disregarded knowledge" test we announced in *Marek* with a different test. I suggest the adoption of the "substantial certainty" test, which has been adopted in Ohio.

In Ohio, the plaintiff must show

(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty and not just a high risk; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Van Fossen v. Babcock & Wilcox Co.*, 3522 N.E.2d 489, 504 (1988).[7]

The reason I suggest using the substantial certainty standard is that it has been found to prevent the transformation of intentional tort cases into a simple negligence case. It is a difficult standard for a plaintiff to make out a *prima facie* case; nevertheless, it does not immunize an employer for behavior that is substantially certain to result in a worker's injury or death. While the "substantial certainty" test has its challenges and detractors, I view it as preferable because it has a developed body of case law, which would not require Idaho's bench and bar to reinvent the wheel.

I also write because I have concerns with the dissent. The dissent would reverse course on *Marek*, and afford immunity to employers in instances where there is a substantial certainty that an employee would be killed as a result of the employer's total disregard of worker safety. It is acknowledged that both before and after Crookham designed and fabricated the seed sorting table, which caused Mrs. Gomez's death, it was cited for serious safety violations, directly related to the lack of safety procedures involved in this case. I don't think a civilized society countenances providing a safe harbor to Crookham for creating an extraordinarily unsafe

---

[7] "The portion of syllabus in the *Van Fossen* case containing this three part test was corrected by the court in *Fyffe v. Jeno's, Inc.,* 570 N.E. 2d 1108 (1991), to accurately reflect the reasoning in the *Van Fossen* decision. Consequently, this three part test has been referred to as the *Fyffe* test." Larson's Workers' Compensation Law § 103.04[2][b] at 103–12.

workplace that resulted in a horrific death such as Mrs. Gomez's. This tragedy could have and should have been avoided. Turning the clock back on *Marek* would allow a recurrence of this type of senseless tragedy in the future.